UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CV-80488-BLOOM

AFFORDABLE AERIAL PHOTOGRAPHY,
INC.

    Plaintiff,

vs.

MODERN LIVING REAL ESTATE, LLC,
and COMPASS FLORIDA, LLC

    Defendant.

## DEFENDANT COMPASS FLORIDA, LLC'S MOTION TO DISMISS THE AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Compass Florida, LLC ("Compass") files this Motion to Dismiss the Amended Complaint, Doc. No. 40, filed by Plaintiff and in support states as follows:

**I. INTRODUCTION**

Affordable Aerial Photography, Inc.'s ("AAP") Amended Complaint alleges Compass is liable for direct and vicarious copyright infringement as its copyrighted photographs were reproduced on Modern Living Real Estate, LLC's ("Modern Living") website without permission. But, to establish liability against Compass, AAP makes the monumental jump that Compass controls and manages Modern Living's website. This conclusion is premised exclusively on Compass's logo appearing on Modern Living's website. The Amended Complaint, however, fails to allege any facts that plausibly sustain Compass took any action to post materials on the website or maintains any control or authority over the website.

In fact, the Independent Contractor Agreement between Compass and Modern Living and the terms of the Modern Living website precludes AAP's averment and demonstrates Compass is not responsible for Modern Living's website or conduct.  Because AAP has not alleged any facts to plausibly sustain its claims against Compass, the Amended Complaint should be dismissed.

**II.    BACKGROUND**

AAP is a Florida company that specializes in photographing real estate.  *See* Doc. No. 40 at ¶¶2, 9.  AAP and its founder are "well known for their aerial photographs," which are captured by a "helium balloon camera-rigging system" designed and built by AAP's founder.  *See Id.* at ¶¶11-12.

AAP claims to be the copyright owner of certain photographs taken by its founder, Robert Stevens: 2015 Photographs; 2012 Photographs; 2015 Photographs H1; and 2013 Photographs.  *See Id.* at ¶¶17-18; 20-21; 23-24; 26-27.  Each of the photographs includes a watermark in the lower left-hand corner identifying AAP's ownership.  *See Id.* at ¶¶19, 22, 25, and 28; *See also* Doc. No. 40-1 at p.3, 40-2 at p.3, 40-3 at p.5-8, 40-4 at p.3.  Plaintiff alleges each photograph is registered with the United States Copyright Office.  *See* Doc. No. 40 at ¶15; *see also* Doc. No. 40-1, 40-2, 40-3, and 40-4.

Modern Living is a Florida limited liability company headquartered in Palm Beach County. *See* Doc. No. 40 at ¶3.  Modern Living "specializ[es] in representing buyers, sellers, and renters in the luxury home market of Palm Beach & Broward County."  *See* Doc. No. 40-6 at 1.  To facilitate its real estate business, Modern Living operates a website and posts information about available properties.  *See* Doc. No. 40 at ¶29; Doc. No. 40-5.  AAP alleges Modern Living used certain AAP copyrighted-photographs on its website without credit or permission.  *See* Doc. No. 40 at ¶¶29-30, 35.

AAP further claims Compass "posted" the infringing photographs on the Modern Living website. *See Id.* at ¶29. According to AAP, Compass is responsible for Modern Living's website because Compass is "prominently co-branded in the top left corner," evidencing both Modern Living and Compass "control[], manage and benefit" from the website. *See Id.* at ¶30. Because Modern Living is a "top producing team at Compass," AAP argues Modern Living "operates under the supervision and control of Compass as one of Compass's 'teams.'" *See Id.* at ¶31. To demonstrate such control, AAP points to Modern Living's contact information—a reference to "Modern Living @ Compass" which includes an email address of "info@modernlivingre.com"—to support its belief Compass controls the website. *See* Doc. No. 40-6 at 3. Finally, AAP alleges Compass provides Modern Living a marketing budget and "various tools[] for marketing efforts including Defendants' Website to support Modern Living's real estate sales and rentals from which Compass receives a share of rental and sales revenue."[1] *See* Doc. No. 40 at ¶34.

The crux of AAP's copyright claims against Compass is Compass "caused" the photographs to be posted to the co-branded Modern Living website. *See Id.* at ¶44. Compass, however, does not own or control Modern Living. *See* Doc. No. 19 (Modern Living's Corporate Disclosure Statement stating "it has no parent corporation and no publicly held corporation owns 10 percent or more" of its stock). Compass does not employ real estate agents; rather, as a real estate brokerage, it forms independent contractor relationships with real estate agents, providing

---

[1] AAP's allegation is derived from the Independent Contractor Agreement between Compass and Patrick David Lafferty, II on behalf of Modern Living ("ICA"). *See* Doc. No. 32 at p.6. As such, the Court may consider the ICA in ruling on the Motion to Dismiss as AAP placed the ICA at issue in the Amended Complaint. *See Strategic Marketing, Inc. v. Great Blue Heron Software*, No. 15-80032, 2015 WL 11438209, at *3 (S.D. Fla. May 12, 2015); *Balmert v. Pulte Home Corp.*, 445 Fed. Appx. 256, 267 (11th Cir. 2011) (finding purchase agreements not attached to complaint were properly considered on motion to dismiss where "it would be impossible for the District Court" to weigh the merits of a "crucial issue" in the case without considering the purchase agreements).

various services to support the agent's real estate sales.  *See* Ex. A.  Compass has no relationship with Modern Living outside of its standard independent contractor agreement.

Importantly, Compass is not responsible for, and does not manage or control Modern Living's website.  Modern Living explicitly acknowledges that "Modern Living Real Estate LLC operates the web site at www.modernlivingre.com[.]"  *See* Ex. B (Privacy Statement (last visited August 26, 2019), *available at* https://modernlivingre.com/privacy-policy/).  Thus, while Compass's logo appears on Modern Living's website, the website's address and contact information, *see* Doc. No. 40-6 at p.3, reflect Modern Living's exclusive control.  In fact, if a user clicks on the "Compass" hyperlink, *see* Doc. No. 40-6 at p.2, the user will be directed to Compass's entirely separate website at https://www.compass.com/agents/miami/patrick-lafferty/.

### III. ARGUMENT

A complaint must be dismissed if the plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While AAP does not need to provide detailed factual allegations, "it must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'"  *Temurian v. Piccolo*, No. 18-6277, 2019 WL 1763022, at *2 (S.D. Fla. Apr. 22, 2019) (quoting *Twombly*, 550 U.S. at 555).  And, although the Court must accept the allegations in the Amended Complaint as true, *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th

Cir. 2008), Plaintiff cannot simply "rest on 'naked assertions devoid of further factual enhancement,'" *Mejia v. Ocwen Loan Servicing, LLC*, 703 Fed. App'x. 860, 862 (11th Cir. 2017).

Because Plaintiff has not alleged sufficient factual support "to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556), the Amended Complaint should be dismissed.

### 1. AAP does not Allege a Valid Claim for Direct Infringement Against Compass.

To establish a claim of direct copyright infringement, AAP must plausibly allege (1) that it owns a valid copyright and (2) that Compass copied original elements of the copyrighted works or materials to state a claim for copyright infringement. *See Strategic Marketing*, 2015 WL 11438209 at *3; *see also Disney Enters. v. Hotfile Corp.*, 798 F. Supp. 2d 1303, 1307 (S.D. Fla. 2011) ("Where a plaintiff shows that he owns a valid copyright and that the other party copied some of the protected elements of that work, he has shown direct infringement of his copyright.") (citing *Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290 (11th Cir. 2011)). Here, Plaintiff's Amended Complaint fails because it is devoid of any factual allegations to establish Compass copied the copyrighted photographs. And, without adequate factual support, a court cannot conclude that the plaintiff's claims are plausible, and dismissal under Rule 12(b)(6) is appropriate.

Notably, AAP fails to allege any facts to plausibly claim Compass directly infringed AAP's allegedly copyrighted photographs.[2] Instead, AAP rests on the allegation that its copyrighted photographs appeared on the Modern Living website at modernlivingre.com that is co-branded with Compass's logo suggesting Compass "controls, manage[s] and benefit[s]" from the website. *See* Doc. No. 40 at ¶¶30-32, 44, 108, 121, 134, 147. But the documents incorporated into the

---

[2] Compass assumes for the purpose of this Motion that AAP holds a valid copyright in the relevant photographs, but reserves all defenses available to the charge of copyright infringement, including a challenge to the validity of AAP's copyrights.

Amended Complaint—Modern Living's website and the ICA—belie this allegation.

First, defendant "Modern Living Real Estate LLC operates the web site at www.modernlivingre.com[.]" *See* Ex. B. While Compass's logo appears on Modern Living's home page, this affiliation does not support AAP's allegation Compass "control[s], manage[s] and benefit[s]" Modern Living's website. *See Estate of Miller v. Thrifty Rent-A-Car System, Inc.*, 637 F. Supp. 2d 1029, 1039 (M.D. Fla. 2009) (noting that "[i]n today's world, it is well understood that the mere use of franchise logos and related advertisements does not necessarily indicate that the franchisor has actual or apparent control over any substantial aspect of the franchisee's business or employment decisions."). Instead, the affiliation reveals the unremarkable relationship between a real estate brokerage and affiliated real estate agents. *See American Dental Ass'n v. Cigna*, 605 F.3d 1283, 1290 (11th Cir. 1990) ("[C]ourts may infer from the factual allegations in the complaint obvious alternative explanations [that] suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer."). This acknowledged affiliation does not establish Compass takes any action to place materials on Modern Living's website—particularly as Modern Living acknowledges its ownership of the website. *See* Ex. B.

Here, Compass does not control or supervise any part of the Modern Living website and does not have the ability to post photographs to that website.[3] AAP has not established any legal basis to impute Modern Living's conduct to Compass. Because the sparse factual allegations in the Amended Complaint fail to plausibly allege Compass is responsible for Modern Living's website, the court cannot "draw the reasonable inference that the defendant is liable for the

---

[3] Indeed, the ICA establishes that Modern Living and Compass have an "independent contractor relationship for all purposes" and "does not create an employer-employee, joint venture, or partnership relationship." *See* Ex. A at Governing Principles. Compass does not control Modern Living or its content and cannot be responsible for any of its purported infringing acts.

misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  As such, the claims should be dismissed for failure to state a claim upon which this Court can grant relief.[4]

### 3. AAP does not Allege a Valid Claim for Vicarious Copyright Infringement Against Compass.

AAP's vicarious copyright infringement claim should also be dismissed for failure to state a claim.  Compass can only be liable for the infringement claim if Compass "infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." *Marketran, LLC v. Brooklyn Water Enters.*, No. 16-81019, 201 WL 8678548, at *2 (S.D. Fla. Aug. 31, 2016) (quoting *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) (internal quotation marks omitted)).  AAP must therefore establish Compass has "(1) 'the right and ability to supervise,' and (2) 'a direct financial interest' in the profits from the infringing activity." *Id.* at *2 (quoting *Klein & Heuchan, Inc. v. Costar Realty Info., Inc.*, 707 F. Supp. 2d 1287, 1297 (M.D. Fla. 2010), *aff'd*, 425 Fed. App'x. 833 (11th Cir. 2011)).  "[S]econdary liability cannot be imposed without first establishing direct infringement by the performer."[5]  *Broadcast Music, Inc. v. Joint Bar & Grill*, No. 12-21209, 2012 WL 6933552, at *2 (S.D. Fla. Dec. 11, 2012) (citing *New World Music Co. v. Tampa Bay Downs, Inc.*, No. 07-398-T-33, 2009 WL 35184, at *4 (M.D. Fla. Jan. 6, 2009); *A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir.

---

[4] For the same reasons, AAP's Digital Millennium Copyright Act ("DMCA") claim should be dismissed.  There are no allegations that Compass removed or obstructed AAP's copyright mark on the photographs.  Instead, AAP asserts its copyright marks were "obstructed or removed from the photographs" or "cropped and composition removed" prior to posting on Modern Living's website.  *See* Doc. No. 40 at ¶¶41-42, 159.  To begin, the photographs attached to both the Complaint and the Amended Complaint *include* AAP's copyright marks.  *See* Doc. No. 1-5 at pp.2-3, 5, 6-7, 9, 11, 12; Doc. No. 40-5 at pp.2-3, 5-12.  Moreover, because Compass is not responsible for Modern Living's website or the content posted to it, *see* Ex. A and Ex. B, AAP makes no plausible claim that Compass took any action to obstruct AAP's copyright mark.

[5] Because AAP must first establish direct infringement to establish vicarious infringement, if AAP's direct infringement claims fail, its vicarious liability claim must also fail.

2001)).  Here, AAP fails to plead any factual allegations to establish the elements of vicarious copyright liability.

The "right and ability to control" element requires "both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so."  *Venus Fashions, Inc. v. ContextLogic, Inc.*, 2017 WL 2901695, at *12 (M.D. Fla. Jan. 17, 2017) (quoting *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1108 (9th Cir. 2007)).  AAP's allegations, however, are insufficient to establish this element.  While AAP asserts Compass has the "right and ability to stop or limit direct infringement" on Modern Living's website*, see* Doc. No. 40 at ¶173, AAP provides no factual allegation to support its conclusory allegation.  In fact, Compass does not have any authority to control Modern Living's website.  *See* Ex. B.  Compass provides nothing more than contractor services to Modern Living.  *See* Ex. A ("This ICA creates an independent contractor relationship for all purposes …").

AAP offers no facts to support an inference Compass has a right to stop Modern Living's allegedly infringing acts—let alone that Compass declined to exercise that right.  Because the Amended Complaint is devoid of a factual basis permitting the Court to plausibly infer Compass has any form of control or supervision over Modern Living or Modern Living's website, AAP's claim should be dismissed.

## IV. CONCLUSION

AAP's Amended Complaint fails to plead sufficient facts to state a claim for copyright infringement against Compass. Compass, therefore, respectfully requests that all claims against Compass be dismissed.

Dated: September 4, 2019

Respectfully submitted,

*s/ Maureen B. Soles*
Maureen B. Soles
Florida Bar No. 1003803
Email: msoles@bakerlaw.com
          smccoy@bakerlaw.com
BAKER & HOSTETLER LLP
200 South Orange Avenue #2300
Post Office Box 112
Orlando, Florida 32802
Telephone: 407-649-4000
Facsimile: 407-841-0168

and

Deborah Wilcox (0038770)
(*pro hav vice*)
BAKER & HOSTETLER LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, OH 44114-1214
Telephone:  216.621.0200
Facsimile:  216.696.0740

*Attorneys for Defendant
Compass Florida, LLC*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 4, 2019, a true and correct copy of the foregoing has been filed with the Court using the Court's CM/ECF system, which will send notice of such filing to all registered CM/ECF recipients.

*s/ Maureen B. Soles*
Maureen B. Soles

# Exhibit A

**COMPASS**

## INDEPENDENT CONTRACTOR AGREEMENT

Broker and Agent agree to the following "Incentives" beginning on the "Start Date" of November 26, 2018 and ending on November 25, 2019 (the "Initial Term"), or for such other period explicitly set forth herein:

1. **"Agent Split":** 85.00% of gross commissions received by Broker from transactions procured and closed by Agent during the period beginning on November 26, 2018 and ending November 25, 2019.

2. **"Launch Marketing Budget"**: $100,000.00 in the aggregate for the Initial Term and $75,000.00 in the aggregate for the period beginning on November 26, 2019 and ending on November 25, 2020, granted to the Team, each divided into quarterly installments. If applicable, the costs of Broker-branded signs, business cards, logos, lifestyle photoshoots, and all other marketing-related costs (collectively, "Marketing Costs") shall be paid from the Launch Marketing Budget or by cash payment from the Team made to Broker. If the Team incurs Marketing Costs exceeding the Launch Marketing Budget, then the Team shall promptly pay Broker in cash for any such Marketing Costs.

3. **"Assistant Contributions"**: $50,000.00 in the aggregate for the Initial Term and $50,000.00 in the aggregate for the period beginning on November 26, 2019 and ending on November 25, 2020 (disbursed in 24 equal semi-monthly installments per period) for administrative and other approved support services engaged and utilized by the Team.

4. **"Signing Bonus"**: A one-time cash signing bonus in the amount of $74,999.00 payable within 30 days of the Association Date.

5. **"Office Subsidy":** A monthly subsidy equal to $3,000.00 (the "Office Subsidy Contributions") in connection with Agent's occupation and use of a non-Broker operated office space for the period beginning on December 1, 2018, and ending no later than December 1, 2020.

6. **"Equity Stock Option Grants":** Agent will be granted up to 4 Options for the purchase of *common shares* of UC under the Plan, granted at regular UC Board meetings after each of the Association Date and the first 3 anniversaries thereof. The Share Count under each Option will equal (a) one-quarter of $99,000.00 *divided by* (b) the PPS at which UC's most senior preferred stock was most recently sold by UC to a third party as part of a substantial financing or other transaction as of the Grant Date. All capitalized terms in this Section are as defined below.

7. **General Stock Option Information:** As used in this ICA, "UC" means Urban Compass, Inc. d/b/a Compass. "Option" means a non-statutory stock option. The "Plan" means UC's 2012 Stock Incentive Plan, as amended. The "Board" is the Board of Directors of UC. "Share Count" means the number of shares available for exercise under the applicable Option. "PPS" means price per share. "Grant Date" means the applicable date on which UC makes an Option grant to Agent. Any Option grant provided to Agent is subject to: (1) Board approval, (2) an independent appraisal of UC's common shares at the Grant Date (for I.R.C. Sec. 409A), (3) Agent's license being associated with Broker on such date, and (4) the Board's right to combine grants made to Agent on the same date. The Board will set each Option's exercise PPS on the applicable Grant Date. Each Option will be subject to a vesting schedule and terms of the Plan and an option agreement (under both of which, Agent is deemed a consultant of UC) to be entered into between Agent and UC. Agent agrees that (x) neither UC, nor any of its Affiliates, nor its or their stockholders, directors, officers, or employees has made or makes any representation that any Option has value, or that a market will exist for UC common shares and (y) the Options are for the purchase of *common shares* of UC but the Share Count is calculated using the PPS of UC's *preferred stock*.

8. **"Resource Fee":** $0 for the current calendar year.

### Governing Principles:

From the Start Date until the date this independent contractor agreement (the "ICA") is terminated, the following principles apply to Agent's performance of real estate brokerage services:

- Agent acknowledges that Agent is not entitled to the Incentives absent Agent's election to use, at all times, Broker's tools titled: (a) "Collections" with all of Agent's buyers, starting on the 45-day anniversary of the Start Date, and (b) "Coming Soon" with all of Agent's sellers, first activating all listings for 5 days internally on Compass.com only and, subsequently, 5 additional days externally on only Compass.com, as permitted by Law (which includes MLS rules). Agent may later elect in writing, without penalty, not to use such tools accordingly but Agent shall no longer be entitled to the Incentives.

- This ICA creates an independent contractor relationship for all purposes including, but not limited to, federal, state and local laws regarding income taxation, withholding tax regulations, unemployment insurance and/or workers' compensation, and does not create an employer-employee, joint venture, or partnership relationship. Incentives are based on Agent's output, not hours worked.

- Any Dispute under this ICA will be exclusively resolved by confidential, binding arbitration per Broker's Terms of Engagement.

- Any and all incentive terms contained in the ICA (excepting only any potential grants of equity) shall be deemed shared by Marcia Lafferty (if a single person, "Partner," if multiple persons, each individually "Partner" and collectively, "Partners," and, in each case, together with Agent, "Team") unless otherwise explicitly stated, notwithstanding any duplicative reference in any such Partner's independent contractor agreement with Broker.

- Notwithstanding anything in this ICA to the contrary, (a) this ICA constitutes the entire agreement between the parties and (b) either party may terminate this ICA at any time for any or no reason. This ICA may be executed in several counterparts and together constitute one instrument. Electronic signatures will be legal and binding. All capitalized terms not defined herein have the meanings assigned to them in Broker's Terms of Engagement, available at www.compassterms.com (*which terms are deemed to be fully incorporated into this ICA*). Agent confirms that Agent is the signatory below and has signed as such, that Agent has not in any way modified the terms of the ICA as signed by Broker, and Agent agrees that any modifications Agent has made to the ICA as signed by Broker shall be deemed void.

- Upon termination of the ICA, if by Broker for Cause (as set forth in Broker's Terms of Engagement) or as a result of Agent's voluntary disaffiliation, within 3 year(s) of Agent's actual receipt of any Incentive(s) (other than Agent Split) pursuant to the ICA, Agent agrees to repay Broker such Incentive(s).

By executing this ICA, Agent agrees, effective as of the Start Date, to the valuable consideration, and the terms and conditions, set forth herein, and Broker's Terms of Engagement, which Agent has read, which are available at: www.compassterms.com.

COMPASS

| "Broker" | Broker Address for Notices: | | Agent Address for Notices: |
|---|---|---|---|
| Compass Florida, LLC d/b/a Compass | c/o 90 Fifth Ave, 3rd Floor<br>New York, New York<br>notices@compass.com | | 480 Hibiscus Street #110<br>West Palm Beach, Fl 33401<br>patrick@modernlivingre.com |

*Robert Reffkin* (signature)

Name: Robert Reffkin
Title: Chief Executive Officer

*signature*

Name: PATRICK DAVID LAFFERTY II

COMPASS

We are very excited to have you join the Compass team! As you make the transition, we want to remind you that Compass requires that you follow all **post-affiliation restrictions** you may be subject to after you disassociate from your previous firm, as well as all applicable rules, laws, and regulations governing the transfer of any listing over to Compass, including:

**(1) Confidentiality Obligations.**

<u>You CANNOT take any confidential or proprietary information</u>. Please do not bring to Compass any information (documents, emails, reports, notes, forms, etc.) that resides or did reside at your previous firm, in any form. To be clear, do not take any form agreements, templates, etc., *even if you created them from scratch while at your previous firm*. It is Compass policy not to permit the taking, storing or use of any information from your previous firm, in any form.

<u>You CAN take your personal contacts and possessions</u>. These are possessions that have absolutely nothing to do with your previous firm such as your photos and personal effects. Your contacts are your family, friends or professional contacts that you *personally sourced and maintained*. When in doubt, leave it behind and we can officially request it from your previous firm after you join Compass.

**Examples of Confidential/Proprietary Information and Personal Work Product**

| Confidential/Proprietary Information (May **not** be retained or used by you) | Personal Work Product (May be retained and used by you) |
|---|---|
| 1. A list of contacts that you created using a list you received from your previous firm. | 1. Your contacts – family, friends and professional contacts that you personally sourced and maintained. |
| 2. Documents referencing any data that you learned of from your previous firm (including through presentations, conversations or e-mails from a manager or other colleague). | 2. Your personal possessions. |
| 3. Documents that you downloaded from your previous firm's internal database or intranet. | |
| 4. Documents you created that are based on templates received from your previous firm. | |

Personal Work Product
*(May be retained and used by you)*

1. Your contacts – family, friends and professional contacts that you personally sourced and maintained.
2. Your personal possessions.

**(2) Non-Solicitation Covenants.** These restrict your solicitation of employees, independent contractors (including real estate agents) and/or clients of your previous firm.

**(3) Listing Transfer Obligations.** You acknowledge that you will 100% follow all rules/regulations that govern the transfer of any exclusive listing agreement to Compass or communications with clients. As an agent, you can be subject to very serious sanctions or fines if you fail to 100% follow these rules/regulations. Any decision to transfer a listing must be made by a client independently, of his/her own free will, and you cannot interfere with any current exclusive listing agreement.

Please promptly inform us if any of these restrictions apply to you. Compass requires that you honor all post-affiliation obligations to your previous firm and will not permit the disclosure or use of confidential or proprietary information. Please note that failure to comply with this policy will result in disciplinary action, including, but not limited to, termination of your affiliation. We believe this is absolutely critical to ensuring that you start your Compass journey without looking back, but looking forward as we help everyone find their place in the world!

By signing below, you acknowledge that you received, read and agree to comply with this notice. Thank you for your immediate cooperation and welcome to the Compass team!

Signature _[signature]_

Agent Name  PATRICK DAVID LAFFERTY II

Date: 11/10/2018

Primary Principal Patrick Lafferty 20181109T154357Z                                Page 3 of 3

# Exhibit B

# PRIVACY STATEMENT

**Last modified July 22, 2017**

**Modern Living Real Estate LLC** operates the web site at **www.modernlivingre.com** ("Site"). We respect the p whether you are just beginning your real estate search or have previously visited our Site. This Privacy Statem privacy, how we treat information we collect on the Site that identifies an individual user ("Personal Informatic does have access to Modern Living LLC's Website.

**BY REGISTERING FOR OR USING THE SITE, YOU SIGNIFY YOUR ACCEPTANCE OF THIS PRIVACY STATEMEN YOU CANNOT USE THE SITE.** We reserve the right to modify this Statement at any time by posting a notice c also provide additional notice of significant changes.) Your use of the Site after the date of the last modificati us that you agree to the changes.

Location of Servers and Transfer of Information to the United States

The Site is hosted by servers in the United States. If you are located outside of the United States, your Persona submitting your Personal Information, you consent to its transfer to the United States and to its storage, proce

Scope of this Privacy Statement

This Privacy Statement applies to your use of this Site only. We do not own, operate or control the web sites c apply to a sales associate's web site, collection, use, storage and disclosure of your Personal Information.

1. Collection and Use of Your Personal Information

We collect your Personal Information on the Site in order to enhance the services we offer you. We collect Pe in order to obtain certain services or information, including (A) registrations for special communications, such c sending you new listings that fit the profile of your saved search; (B) requests to find a property, to list your pro (D) requests to receive periodic industry updates; (E) requests to email a listing to a friend; (F) applications for

Requests to Find or List a Property and to Find a Sales Associate

If you submit a request through this Site to find or list a property or to find a sales associate, you will be asked to a sales associates to respond to your request. For example, if you ask that we list your property or if you a: sales associate in that area.

Contacting Us

If you contact us, we collect Personal Information, which is retained or referred to a sales associate depending or a sales associate, it is referred to a sales associate; if your inquiry or complaint requires a response from us a response. The information we collect is not used in any other way and is not retained after one y

Refer a Listing to a Friend

If you choose to send a listing to a friend, you will be asked to provide the friend's name and email address in not store this information, and the information is used only to send the one-time

Employment Inquiry

If you are seeking employment, you will be asked to provide Personal Information about yourself. We refer thi
you live.

2. Collection of Non-Personal Information

Even if you do not send us any Personal Information, we collect information about how you use our site ("Non
identify you personally and is explained in more detail below under "Non-Personal Information".

Cookies

A cookie is a small data file, often including an anonymous unique identifier, that is sent from a web site's con
is common on the Internet. A web site can send its own cookie to your browser if your browser's preferences
web site to access only the cookies it has already sent to you, not the cookies sent to you by other sites. You
cookies, or notify you when a cookie is sent. (Each browser is different, so check the "Help" menu of your brov
reset your browser to refuse all cookies or indicate when a cookie is being sent. But if you refuse cookies, som
provide services or information you have requested. For example, without cookies, we will not be able to prov

Non-Personal Information

Like many sites, we obtain Non-Personal Information such as IP (internet protocol) addresses, browser types, t
about where a user comes from before arriving at our Site, what pages a user visits, the order of those pages
this service for us by sending a cookie to gather this information, compile it, and report to us. We use Non-Pe
you see, improve our services, conduct research, and provide anonymous aggregated reporting for internal a

Advertising Networks

We send to your web browser some of the advertisements you see when you use our network of web sites. H
servers or ad networks, to serve advertisements within our web pages. Because your web browser must reque
these companies can send their own cookies to your cookie file, just as if you had requested a web page fron
an advertisement to a certain audience (for example, men ages 18-34) or audience segment (for example, me
respond to that ad, the advertiser or ad-server may conclude that you fit the description of the audience the
third-party ad servers to employ anonymous cookies only for ad delivery and anonymous targeting. Our third
to any Personal Information about you.

Opting Out of Third-Party Ad Servers

If you want to prevent a third-party ad server from sending and reading cookies on your computer, currently
out (if they offer this capability). Currently, we have relationships with the following third-party ad networks (c
statements): 24/7 Real Media, Inc. http://www.247realmedia.com/privacy.html

3. Use of Information

We use the Personal Information and the Non-Personal Information we collect on the Site ⒶⒶ to provide you v
including saving searches and, if you request it, sending you updates about those searches; Ⓑ to receive, if y
your questions or complaints; Ⓓ to refer you to Franchisees and sales associates about finding or listing a pro
friend; and (F) inquiries about franchising opportunities. and (G) for analytical purposes to help us improve th
Personal Information to inform you about other services and products that may be available through us, our f
which we have a marketing relationship, and to provide you a customer survey to assess your satisfaction wit
audient measurement and analytics services for us, to serve advertisements on our behalf, and to track and r

entities may use cookies, web beacons, SDKs, and other technologies to identify your device when you use th

and such services will be covered by the privacy policy of the respective third parties. We use Google Analyti

about the use of the Site.  More information on Google Analytics – including how you can control the informa

here:  www.google.com/policies/privacy/partners/

4. Sharing Your Information

We reserve the right to share your Personal Information with our affiliated companies and marketing partners

providing you with full service real estate brokerage services. We do share your Personal Information under th

**A.** Third party vendors we engage to provide services on our behalf, such as hosting, web-site development,

have agreed not to disclose the Personal Information or to use it for any purpose other than providing the rec

**B.** There may arise special circumstances where it is necessary for us to disclose and use Personal Information

Statement or any other part of our Terms & Conditions to protect our property or rights; to protect the safety

illegal or improper activities; to carry out a merger or consolidation with another entity, a sale or transfer of s

reasons we determine in good faith are necessary, appropriate, or required by law, such as when we respond

process.

The Site contains links to third-party web sites, including a mortgage company, our Franchisees, our advertise

will indicate whether clicking the link will send you off our Site. When you click on those links, you will go to a

statement and we encourage you to read that policy statement. Please be aware that we are not responsible

expressly disclaim any liability for their actions, including actions relating to the use and disclosure of Persona

aware of when you leave our Site and enter a third-party web site, including one of our independent Franchis

on any web site that collects your Personal Information.

5. Security

Our hosting services maintains its systems in accordance with reasonable industry standards to reasonably se

transmission over the Internet can be guaranteed to be 100% secure. "Perfect security" does not exist on the I